UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED TRANSPORTATION UNION,

    Petitioner,

    v.

UNION PACIFIC RAILROAD
COMPANY,

    Respondent.

Case No. 08-cv-299-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on cross motions for summary judgment. Petitioner United Transportation Union filed a Motion for Summary Judgment (Doc. 13) asking the Court to set aside an arbitration award of the First Division of the National Railroad Adjustment Board (NRAB). Respondent Union Pacific Railroad Company filed a Motion for Summary Judgment (Doc. 15) asking the Court to uphold the award. The parties have responded to each other's motions. For the following reasons, the Court DENIES Petitioner's Motion (Doc. 13) and GRANTS Respondent's Motion (Doc. 15).

## BACKGROUND

Congress established an entity, the NRAB, made up of experts in the railroad industry to resolve labor disputes involving railroads and airlines. *Gunther v. San Diego & Arizona Eastern Ry.*, 382 U.S. 257, 261 (1965). Section 3, First (i) of the Railway Labor Act (RLA) provides that the NRAB handles "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of [collective bargaining] agreements." In the instant case, Union Pacific Railroad Company (Carrier) referred

1

for arbitration a dispute arising from a Memorandum of Understanding (MOU) between itself and the United Transportation Union (UTU).  The NRAB's factual findings on this dispute are conclusive, 45 U.S.C. 153 First (p) and (q), and are summarized below.

In early 2002, a number of UTU represented conductors and brakemen who work in Missouri and Kansas began taking combinations of paid and unpaid days off to avoid working on weekends and holidays.  This resulted in a manpower deficiency that led to a wholesale degradation of customer service, including record numbers of train delays.

Carrier brought an action in U.S. District Court for the District of Kansas seeking injunctive relief and urging the court to find UTU, its local Chairperson, and several of its members in violation of the RLA.  While the litigation was underway, Carrier and UTU reached an agreement regarding the manpower issues in Missouri and Kansas.  The resulting MOU stipulated that conductors and brakemen were expected to work 21-23 starts per month in order for Carrier to satisfy its customer and operational requirements and in order to ensure an equitable distribution of time off among employees.   UTU and all its members agreed not to engage in illegal work stoppages.  Carrier agreed to dismiss its lawsuit and agreed to not attempt to recover damages from any employees for time periods at issue in the suit.

On March 10, 2005, UTU General Chairman purported to cancel the MOU pursuant to a provision of another collective bargaining agreement allowing for unilateral cancellation of "local agreements or understandings" by the serving of ten days written notice.  Carrier informed UTU that it did not consider the MOU to be a "local agreement or understanding" subject to unilateral cancellation, and considered the MOU to be in full force and effect.  Carrier further filed a letter of grievance with UTU claiming breach of the MOU and submitting a claim of

damages in the amount of a basic day's pay for any employee failing to fulfill his obligations under the MOU. UTU responded that the MOU was no longer in effect, and therefore, could not have been breached. Consequently, UTU did not address Carrier's claim for damages. Carrier submitted two claims to NRAB for arbitration. First, Carrier claimed that UTU's purported cancellation of the MOU amounted to a breach of the agreement. Second, Carrier claimed that UTU's breach resulted in damages to Carrier, and Carrier asked to be made whole for the losses it said it incurred.

As to the first claim, the NRAB found that the MOU was not a local agreement, and that UTU had no authority to unilaterally attempt to cancel it. This attempt, the NRAB found, was a breach of the MOU. As to the remedies for the breach available to the Carrier, the NRAB stated:

> Once a violation has been established, in the absence of any Agreement limitations on the arbitrator's discretion to fashion a remedy, the Board for nearly 75 years has determined appropriate remedies on an ad hoc basis, balancing all relevant factors to reach an appropriate result. Monetary damages are well within the permissible range of such remedies.

However, the NRAB found that Carrier had not sufficiently supported its claim for damages. It remanded the issue of quantifying Carrier's damages to the parties with instructions that if the parties failed to reach agreement on the issue, the Board would reconvene to hear further argument.

The parties failed to reach an agreement. UTU essentially advanced the same argument to the NRAB on the issue of damages that it advances here, that is, that the NRAB is without jurisdiction to award monetary damages to a carrier when a union breaches a collective bargaining agreement. The NRAB rejected this contention, stating, "Arbitrators have inherent power under a contract to award monetary damages to place the parties in the position they

3

would have been in had there been no violation." The NRAB went on to say that the overarching goal of the RLA is to avoid unsanctioned interruptions in interstate rail. The purposes of the RLA are, therefore, furthered when a union is forced to pay the damages incurred by a carrier when the union unilaterally withholds services and refuses to abide by contractually mandated grievance procedures. The Board declared, "[I]t would be a curious justice system that would allow one party to an agreement to seek realistic enforcement measures while denying the same rights to the other party." It went on to say:

> By unilaterally rescinding the MOU, the UTU Local inflicted serious economic harm on the shipping public, on the entity employing its members, and thus on the members themselves. While Carrier's evidence, unrebutted here, reasonably supports greater monetary relief, upon due consideration of the record as a whole, Carrier is hereby awarded the sum of $17,308 representing penalty payments for each trip not properly protected by pool conductors in June 2005, as credibly documented herein.

## ANALYSIS

Both parties acknowledge that the scope of judicial review of NRAB decisions "is among the narrowest known to the law." *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978). "[A]n arbitrator's award is legitimate 'so long as it draws its essence from the collective bargaining agreement.'" *Dexter Axle Co. v. International Association of Machinists & Aerospace Workers*, 418 F.3d 762, 767 -68 (7th Cir.2005) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the CBA."*Dexte*r, 418 F.3d at 768 (internal quotations omitted). The award will not be vacated unless the Board could not possibly have arrived at the award by interpreting the contract. *Id.*

4

The Court must "resolve any reasonable doubt about whether an award draws its essence from the CBA in favor of enforcing the award." *Id.*

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies." *Local 879 v. Chrysler Marine Corp.*, 819 F.2d 786, 789 (7th Cir. 1987). The Court may only reverse the Board's remedy when it is clearly outside of the contemplation of the parties at the time they devised the Agreement. *Id*.

Here, UTU argues that the NRAB could not have based its award on an interpretation of the MOU, because the MOU does not contain a provision allowing for damages to Carrier in the event of a breach by UTU. UTU contends that this means there is no basis in the agreement for an award of monetary damages. However, an arbitral award may be proper even in the absence of express contractual language authorizing the award, so long as "the arbitrator's interpretation can in some rational manner be derived from the collective bargaining agreement." *Butler Mfg. Co. v. United Steelworkers of America*, 336 F. 3d 629, 633 (7th Cir. 2003) (internal quotations omitted). Therefore, the mere silence of the MOU as to the remedies available for this type breach does not proscribe the arbitrator from fashioning an appropriate one.

UTU insists, however, that the NRAB's discretion to fashion a remedy was constrained by two provisions in the MOU. The first reads, "Should the availability of employees, contained by this agreement, fall below acceptable levels, the Local Chairperson will work with [Carrier] to encourage the mark up of employees in non-compensated status." The second reads, "To ensure compliance, the parties agree to meet regularly with the General Superintendent to review

5

the employee work histories and to jointly counsel any employee(s) who fail to meet his/her requirement." UTU asserts that these provisions amount to exclusive remedies. Accordingly, the NRAB's finding that the Agreement did not limit the arbitrator's discretion to fashion a remedy was in error.

However, these remedies are not clearly exclusive. Both provisions deal only with the possibility that conductors and brakemen will fail to make the required number of monthly starts. Neither provision accounts for the possibility that one of the parties to the MOU will attempt to unilaterally withdraw from the agreement and the enforcement provisions therein. Here, the breach giving rise to damages was UTU's purported cancellation of the MOU, not the failure of any particular UTU members to meet their minimum monthly starts.[1] A breach of the sort at issue here is not explicitly addressed by the MOU. The NRAB's interpretation that the contract allows for monetary damages in the event of a breach by UTU is a permissible one. Unlike the cases relied upon by UTU, the arbitrator did not fashion a remedy at odds with an explicit provision in the contract, he simply fashioned a remedy in the absence of an explicit provision in the contract. Nor is such a remedy, as UTU contends, "a shocking departure from the agreement." Monetary damages are not "an odd and unprecedented remedy" created by the arbitrator "based only on his notions of industrial justice and nothing in the agreement." As the Board's decision points out, the usual remedy for breach of contract is the amount of money that will place the parties in the position that they would have been in had no breach occurred. Restatement (Second) of Contracts § 344 cmt. a (1981). It is certainly possible that this

---

[1]To be sure, the two may be related. The Board found that UTU's motive in canceling the MOU was to pressure Carrier to hire more trainmen, something it might have had to do if it was unable to rely on its current workforce working the required number of starts.

elementary principle of contract law was contemplated by the parties at the time they entered into the MOU as the likely remedy for any breach of their agreement.

Additionally, a monetary award to a carrier for breach of a CBA is not precluded by the RLA. The UTU has cited a number of cases that stand for the proposition that the RLA does not provide for statutory damages to be awarded to either unions or carriers. *See, e.g. CSX Transportation v. Marquar*, 980 F.2d 359 (6th Cir. 1992). However, here, Carrier did not seek a statutory remedy, but a remedy under the contract. As noted by the Fourth Circuit, the fact that statutory monetary damages are not available to a carrier does not preclude the carrier from seeking contract damages in arbitration. *Norfolk Southern Ry. Co. v. Brotherhood of Locomotive Engineers*, 217 F.3d 181, 191 n.6 (4th Cir. 2000).

In sum, the NRAB did not exceed its jurisdiction in fashioning the appropriate remedy to compensate Carrier for UTU's breach. The arbitrator interpreted the MOU to allow for monetary damages. This interpretation can rationally be derived from the MOU because it is neither precluded by the express terms of the Agreement nor by the RLA.

## CONCLUSION

The Court **DENIES** Petitioner's Motion (Doc. 13) and **GRANTS** Respondent's Motion (Doc. 15). NRAB issued arbitration Award No. 26448 and the Supplement to Award No. 26448 are hereby upheld. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 6, 2009**

                        s/ J. Phil Gilbert
                        **J. PHIL GILBERT**
                        **DISTRICT JUDGE**